UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

F<span/>LOYD S<span/>HAW,

    Movant,

v.

U<span/>NITED S<span/>TATES OF A<span/>MERICA,

    Respondent.
_____/

Criminal Case No. 15-20624-2
Civil Case No. 17-13093

S<span/>ENIOR U.S. D<span/>ISTRICT J<span/>UDGE
A<span/>RTHUR J. T<span/>ARNOW

**O<span/>RDER D<span/>ENYING IN PART M<span/>OVANT'S M<span/>OTION TO V<span/>ACATE S<span/>ENTENCE P<span/>URSUANT TO 28 U.S.C. § 2255 [195]; A<span/>PPOINTING F<span/>EDERAL D<span/>EFENDER TO R<span/>EPRESENT M<span/>OVANT AT E<span/>VIDENTIARY H<span/>EARING ON R<span/>EMAINING C<span/>LAIM FOR R<span/>ELIEF; AND D<span/>ENYING AS MOOT M<span/>OVANT'S M<span/>OTION FOR L<span/>EAVE TO F<span/>ILE AN A<span/>MENDED P<span/>LEADING [230] AND M<span/>OTION TO A<span/>MEND [237]**

  The Government presented Floyd Shaw, a 20-year-old with no felony record, with a Hobson's choice:[1] plead guilty to Conspiracy to Distribute and Possession with Intent to Distribute Heroin and serve at least fifteen years in prison under the plea agreement; or, proceed to trial on additional counts and face the possibility of serving up to fifty years in prison. Relying, in part, on his attorney's advice, Mr. Shaw chose the former. Second-guessing his decision, Mr. Shaw

---

[1] A "Hobson's choice" is an apparently free choice where there is no real alternative. The term originated in England in the early 1600s, where a man named Thomas Hobson worked as a licensed carrier. Hobson kept horses to carry goods between Cambridge and London and rented them to university students. Students had their favorite horses. In an effort to prevent those horses from being overworked, Hobson used a rotation system which gave each customer the choice of taking the horse closest to the stable door or no horse at all. This method became known as Hobson's choice. *Hobson's Choice*, M<span/>ERRIAM-W<span/>EBSTER (last visited Aug. 8, 2018), https://www.merriam-webster.com/dictionary/Hobson's%20choice.

brings this Motion to Vacate Sentence [195] pursuant to 28 U.S.C. § 2255 for relief.

For the reasons explained below, the Court **DENIES in part** the Motion to Vacate Sentence [195] with the remaining issue of whether Mr. Shaw instructed his counsel to file a notice of appeal to be decided after an evidentiary hearing.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 2015, a grand jury returned a Superseding Indictment [70] charging Floyd Shaw, among others, with: Conspiracy to Distribute and to Possess with Intent to Distribute Heroin (Count I); Conspiracy to Distribute and to Possess with Intent to Distribute Heroin Within 1000 Feet of an Outdoor Facility Containing a Playground (Count III); Distribution of Heroin Resulting in Serious Bodily Injury (Counts VI and VIII); Distribution of Heroin (Count VII); Conspiracy to Possess Firearms in Furtherance of a Drug Trafficking Crime (Count XIII); Possession with Intent to Distribute Heroin; Aiding & Abetting (Counts XIV and XIX); and Possession of a Firearm in Furtherance of Drug Trafficking Crime; Aiding & Abetting (Count XV).

On April 7, 2016, Mr. Shaw pleaded guilty to Count I pursuant to a Rule 11 Plea Agreement ("Plea Agreement").[2] The Plea Agreement [115] provided that Mr.

---

[2] Count I carried a mandatory minimum penalty of five years of imprisonment and a maximum penalty of 40 years of imprisonment. However, in the Plea Agreement, the

Shaw, along with seven other named defendants, agreed to possess and distribute heroin in Detroit from 2012 to 2015. The Plea Agreement included the following Relevant Conduct:

> On or about June 8, 2015 . . . FLOYD SHAW, knowingly and intentionally distributed a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, which distribution resulted in the serious bodily injury of another person, J.L., from the use of such substance. All parties agree that J.L. experienced serious bodily injury due to the fact that he was unconscious and barely breathing after ingesting the heroin provided by FLOYD SHAW. If not for the timely administration of Narcan (also known as Naloxone), a heroin antidote, J.L. faced a substantial risk of death. The parties further agree that the heroin was the "but for" cause of serious bodily injury as it was the sole cause of the injury.
>
> On or about June 9, 2015 . . . FLOYD SHAW, knowingly and intentionally distributed a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, which distribution resulted in the serious bodily injury of another person, J.H., from the use of such substance. All parties agree that J.H. experienced serious bodily injury due to the fact that he was unconscious and barely breathing after ingesting the heroin provided by FLOYD SHAW. If not for the timely administration of Narcan (also known as Naloxone), a heroin antidote, J.H. faced a substantial risk of death. The parties further agree that the heroin was the "but for" cause of serious bodily injury as it was the sole cause of the injury.

The Plea Agreement stated that upon the Court's acceptance of the Agreement, the Government would dismiss all remaining counts against Mr. Shaw, including Counts VI and VIII, which each carried a mandatory minimum of twenty

---

parties agreed that if the Court were to impose a sentence below 180 months (15 years) for Count I, the Government could withdraw from the Agreement.

years, and Count XV, which carried a consecutive mandatory minimum of five years. Pursuant to Fed. R. Cr. P. 11(c)(1)(C), the parties agreed to a sentencing range of 180-240 months (15-20 years). According to the Appeal Waiver provision, Mr. Shaw also agreed to waive his right to appeal if he was sentenced within the designated range.

At the Plea Hearing, Mr. Shaw testified that he had reviewed the Plea Agreement with his attorney, was satisfied with his attorney's work, and did not have any questions. Plea Hr'g Tr. 5:23-25; 6:1-10, Apr. 7, 2016. Moreover, the Government found it necessary to clarify the Agreement's Relevant Conduct:

> Mr. Corbett: Do you recall giving heroin out, selling heroin on those dates in the Detroit area?
>
> The Defendant: Yes.
>
> Mr. Corbett: And do you agree or are you not denying that individuals who received that heroin that you sold to them ingested it, became unconscious, and would have died but for the administration of Narcan?
>
> The Defendant: Yes.
>
> Mr. Corbett: And that the heroin was the but-for cause of the person having this overdose where they needed Narcan, is that correct?
>
> The Defendant: Yes.

*Id.* at 11:1-13.

Mr. Shaw further acknowledged that he had waived his right to appeal in the event that the Court imposed a sentence within the agreed-upon range and to have

the Government prove each element of the offense beyond a reasonable doubt. *Id.* at 8:22-25; 12:22-25. The Court accepted Mr. Shaw's plea as voluntary and knowledgeable, but took the Agreement under advisement because it is "not a big fan of the Prosecutor deciding what the minimum sentence has to be or can be." *Id.* at 20:21-23.

On October 3, 2016, the Court held a Sentencing Hearing, at which the Court noted that the Presentence Report provided a guidelines' range of 210-262 months (17 years, 6 months - 21 years, 10 months). Sent'g Hr'g Tr. 7:4-15, Oct. 3, 2016. The parties reminded the Court that the Plea Agreement had set forth a sentencing range of 180-240 months (15-20 years).

The Government recommended a sentence of 180 months (15 years), the lowest sentence authorized under the Plea Agreement. *Id.* at 10:12-14. The Government did not file a § 5K1.1 motion for reduction of sentence. *Id.* at 11:16-21.

Defense counsel, without having filed a sentencing memorandum prior to the hearing, asked the Court to "fashion a sentence that the Court finds to be appropriate . . . somewhere between the five year [mandatory minimum] and 180 [months]."[3] *Id.* at 13:22-25. Counsel recognized that if the Court were to sentence

---

[3] Defense counsel did not file a sentencing memorandum on the docket. The Government attached counsel's sentencing memorandum to its Response [229] for reference.

Mr. Shaw according to his recommendation, the Government would void the Agreement. *Id.* at 17:7-13.

Ultimately, the Court sentenced Mr. Shaw to 180 months (15 years) of imprisonment pursuant to the Plea Agreement and the sentencing factors set forth in 18 U.S.C. § 3553. Mr. Shaw did not appeal his conviction.

Mr. Shaw filed the instant Motion to Vacate Sentence [195] on September 20, 2017. On April 23, 2018, Mr. Shaw's attorney, Peter Kelley, filed an Affidavit [228] concerning his representation of Mr. Shaw. The Government filed a Response [229] incorporating Mr. Kelley's Affidavit on April 27, 2018. Mr. Shaw filed a Motion for Leave to Amend [230] on April 27, 2018. He also filed a Declaration [235] in response to Mr. Kelley's Affidavit on May 25, 2018. On June 28, 2018, Mr. Shaw filed a second Motion to Amend [237] and a Reply [238].

## ANALYSIS

To succeed on a motion to vacate, set aside, or correct sentence, a movant must allege "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

Mr. Shaw alleges errors of constitutional magnitude. First, he argues that his attorney provided ineffective assistance of counsel during plea bargaining (Grounds I and III) and when he failed to file a notice of appeal (Ground II). Second, he argues that his plea was involuntary.

I. **Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, Mr. Shaw must demonstrate that defense counsel: 1) rendered deficient performance; and 2) prejudiced the movant's defense, so as to render the outcome of the proceedings unreliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

"The performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness." *United States v. Pola*, 703 F. App'x 414, 417 (6th Cir. 2017) (internal citation and quotation marks omitted). Additionally, where a movant who has pleaded guilty establishes that counsel was deficient, he must also show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

A. **Counsel did not render deficient performance during plea bargaining**

The Sixth Amendment right to counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). Thus, Mr. Shaw was "entitled

to the effective assistance of competent counsel" during plea negotiations. *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

Mr. Shaw argues that his attorney's representation fell below an objective standard of reasonableness when he negotiated for the inclusion of a sentencing enhancement under U.S.S.G. § 2D1.1(a)(2) in his Plea Agreement. Section 2D1.1(a)(2) provides a base offense level of 38 if "the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance[.]" Mr. Shaw maintains that his attorney should have negotiated for a plea deal which excluded the enhancement because he did not cause serious bodily injury and the Government did not prove beyond a reasonable doubt that he caused J.L. and J.H. to suffer serious bodily injury.

Mr. Shaw's argument is futile. Mr. Shaw admitted on the record that he distributed heroin that caused serious bodily injury – he cannot now claim that counsel should have objected to facts to which he stipulated in open court. *See Morris v. United States*, No. 1:12-CR-91-1-HSM-WBC, 2017 WL 1088289, at *8 (E.D. Tenn. Mar. 21, 2017) ("Solemn declarations in open court carry a strong presumption of verity." (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))). Moreover, upon reviewing and signing the Plea Agreement, which included a detailed Relevant Conduct section, Mr. Shaw accepted responsibility for the resulting injuries.

Furthermore, counsel's decision not to object to the application of § 2D1.1(a)(2) was not unreasonable; it was strategic. *See McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012) (internal citations and quotation marks omitted) (noting that a court owes "substantial deference to counsel's decisions . . . if the decision might be considered sound trial strategy."). The testimony at the plea and sentencing hearings, coupled with Mr. Kelley's Affidavit, establish that Mr. Kelley negotiated with the Government to secure a lower sentence for Mr. Shaw.

In plea bargaining, "defense attorneys must make careful strategic choices in balancing opportunities and risks." *Premo v. Moore*, 562 U.S. 115, 125 (2011). Ultimately, the deal offered to Mr. Shaw was entirely up to the prosecutor. In light of the Government's power over plea bargaining, Mr. Shaw has not shown that his attorney's failure to secure a better deal constituted deficient performance.

**B.     A hearing is necessary to determine whether Mr. Shaw instructed counsel to file a notice of appeal**

"Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000).

"The existence of an appeal waiver does not excuse counsel from filing a notice of appeal if explicitly directed to do so." *Rivers v. United States*, No. 3:15 C 00108, 2017 WL 1653542, at *10 (M.D. Tenn. May 2, 2017), *certificate of appealability denied,* No. 17-5678, 2017 WL 9545874 (6th Cir. Dec. 15, 2017) (citing *Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012)). Accordingly, "even when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal." *Campbell*, 686 F.3d at 360.

The Plea Agreement signed by Mr. Shaw included an Appeal Waiver. When asked whether he understood that if the Court "give[s him] less than the 262 months [he would] lose [his] right to appeal," Mr. Shaw responded "yes." Plea Hr'g Tr. 8:23-25. In addition, at the Sentencing Hearing the Court explained:

> I do have to tell you you have a right to appeal. But in your Rule 11 Agreement I believe you gave up that right in the event that your sentence was 180 months. If you choose to change [sic] whether that is a valid provision or not your attorney can talk to the case manager and he will get you the forms to ask for an appellate lawyer and transcript and filings if any.

Sent'g Hr'g Tr. 34:11-17.

Mr. Shaw submits that after sentencing, he asked his attorney to file an appeal. Mr. Shaw maintains that his attorney "indicated that he would file such notice within 14-days following [his] sentencing" but "can't remember exactly

where and when this discussion occurred." [Dkt. #235 at 8]. Mr. Shaw further maintains that he was "always left with the clear impression that [he] could challenge, upon appeal, certain limited aspects of how [his] sentence was enhanced[.]" *Id.* at 9.

Mr. Kelley, on the other hand, asserts that during and after the Sentencing Hearing, there was no discussion concerning the issue of appeal. He further asserts that had Mr. Shaw asked him to file an appeal, he would have immediately submitted the requisite paperwork to the Court.

Whether Mr. Shaw instructed Mr. Kelley to file a notice of appeal boils down to a credibility dispute. "Because the resolution of this factual issue is pivotal to [Mr. Shaw's] claim for relief, the district court must conduct an evidentiary hearing to determine if [he] in fact expressed the desire for an appeal as he now asserts." *Campbell*, 686 F.3d at 360. The Court will appoint the Federal Defender to represent Mr. Shaw at the evidentiary hearing.

### II. The plea was knowing and voluntary

"A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal citation omitted). Mr. Shaw argues that his plea was not knowing and voluntary because he: 1) did not fully understand the plea agreement, specifically how the Government could dismiss the serious bodily injury counts, but nonetheless

introduce relevant conduct to enhance his sentence; and 2) pleaded guilty out of fear of a significantly longer prison sentence.

Mr. Shaw's first argument is without merit. After thorough questioning, the Court accepted Mr. Shaw's plea as voluntary and knowledgeable, finding that he understood the consequences, including the waiver of his constitutional rights and eligibility for prison. The Court's "proper colloquy can be said to have cured any misunderstanding [he] may have had about the consequences of his plea." *Ramos v. Rogers*, 170 F.5d 360, 565 (6th Cir. 1999).

However, with respect to Mr. Shaw's second argument, the Court is troubled by the fact that Mr. Shaw was given virtually no choice but to plead guilty. The plea bargaining process has become coercive to defendants and has "negate[d] the people's interest in participating in their government." *United States v. Stevenson*, No. 2:17-CR-00047, 2018 WL 1769371, at *8 (S.D.W. Va. Apr. 12, 2018). Nearly all convictions rest entirely within the hands of prosecutors, some of whose focus has shifted from securing justice to inducing the defendant into accepting a deal at the expense of his dignity.[4]

But, our criminal justice system "was never intended to place all the power of accuser, judge, and jury into the hands of the government . . . . [it] was meant to

---

[4] Between 90 and 95 percent of cases are resolved by guilty plea. BUREAU OF JUSTICE ASSISTANCE, U.S. DEP'T OF JUSTICE, PLEA AND CHARGE BARGAINING, RESEARCH SUMMARY (2011), *available at* https://www.bja.gov/Publications/PleaBargainingResearchSummary.pdf.

be a balanced system that regulates the investigation, formal accusation, adjudication of guilt and innocence, and punishment of crimes." *Id.* at *9.

The plea deal here hardly reflects that balance. Mr. Shaw, who, prior to this case had never been convicted of a felony, is now serving fifteen years in prison for selling heroin on behalf of a group in which he was the youngest member. Nevertheless, because the inequitable result in this case is the byproduct of excessive prosecutorial power, and not the alleged involuntariness of his plea or ineffective assistance of his counsel, Mr. Shaw is not entitled to relief on this ground.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Movant's Motion to Vacate and Correct Sentence [195] is **DENIED in part**. The Motion is denied, and Movant is denied a certificate of appealability, with respect to all arguments except Movant's argument that his counsel was ineffective for failing to file a notice of appeal.

**IT IS FURTHER ORDERED** that the Federal Defender is **APPOINTED** to represent Movant at an evidentiary hearing on his remaining claim for relief.

**IT IS FURTHER ORDERED** that Movant's Motion for Leave to File Amended Pleading [230] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Movant's Motion to Amend [237] is **DENIED as moot**.

**SO ORDERED**.

Dated: August 9, 2018

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge