UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                            Case No. 15-20624

vs.                                         HON. MARK A. GOLDSMITH

FLOYD SHAW,

        Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION TO MODIFY SENTENCE (Dkt. 311)**

This matter was previously assigned to the late Judge Arthur Tarnow. Defendant Floyd Shaw pleaded guilty to conspiring to distribute and possessing with intent to distribute heroin. Plea Agreement (Dkt. 115). On October 27, 2016, Judge Tarnow sentenced Shaw to 180 months' imprisonment. Judgment (Dkt. 161). Shaw is currently incarcerated at the federal correctional institution in Sandstone, Minnesota. His projected release date is March 2, 2030.[1]

After beginning his prison term, Shaw filed a motion to vacate his sentence under 28 U.S.C. § 2255 (Dkt. 195). In resolving Shaw's motion, Judge Tarnow commented that "Shaw's case is emblematic of the breakdown of our justice system's sentencing structure," referring to the great "power" that prosecutors wield to determine the "the offense and the offender," and the comparatively "little negotiating power" of criminal defendants. 11/3/20 Op. at 24–26 (Dkt. 287). Nevertheless, Judge Tarnow determined that Shaw was not entitled to relief under § 2255 (Dkts. 240, 287).

---

[1] See Federal Bureau of Prisons (BOP), "Find an Inmate," https://www.bop.gov/inmateloc/ (last visited July 6, 2022).

Shaw subsequently filed a motion for compassionate release (Dkt. 289), arguing that he was entitled to either immediate release or home confinement due to (i) the unsafe COVID-19 conditions in prison and (ii) his high risk of a COVID-19 infection due to his hypertension, migraine headaches, and obesity, id. at 4–9. Shaw also argued that he was a "a model inmate" who has been rehabilitated and would not pose a danger to society if released early. Id. at 9–10. On April 12, 2021, Judge Tarnow denied the motion without prejudice (Dkt. 295), explaining:

> Although Mr. Shaw has submitted several certificates showing his history of program participation in prison, especially considering his disciplinary record, the Court is not convinced of Mr. Shaw's rehabilitation at this time. However, Mr. Shaw is encouraged to continue to fully participate in prison programming that will prepare him for a safe return to the community. Further, Mr. Shaw may seek compassionate release from this Court again when he can present specific and individualized evidence of his success.

Id. at 3.

Following Judge Tarnow's passing, this matter was reassigned to the undersigned. Less than a year after Judge Tarnow's denial of his first motion for compassionate release, Shaw filed the instant motion to modify his sentence (Dkt. 311). Shaw asks for the Court to either release him immediately, reduce his sentence to "5[] years or any other amount of time the [C]ourt deems appropriate," or permit him to serve the remainder of his sentence on home confinement.[2] Having considered all briefing and record materials submitted by the parties, the Court denies Shaw's motion.[3]

---

[2] To the extent that Shaw seeks home confinement under the Coronavirus Aid, Relief, and Economic Security Act, § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (2020), his motion is denied because the BOP has sole discretion to grant such relief. See United States v. Mattice, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020). However, the Court may consider Shaw's request for home confinement under 18 U.S.C. § 3582(c). Courts granting compassionate release pursuant to that statute may convert a defendant's remaining sentence term to a term of supervised release and impose an initial term of home detention. See, e.g., United States v. Amarrah, 458 F. Supp. 3d 611, 620–621 (E.D. Mich. 2020).

[3] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). In addition to Shaw's pro se motion, the briefing includes Shaw's supplemental brief, which he filed through appointed counsel (Dkt.

I. ANALYSIS

The First Step Act (FSA) modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020).[4] Before granting a compassionate release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction"; (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the United States Court of Appeals for the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It has further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine

---

328); the Government's sealed response to Shaw's pro se motion (Dkt. 316) and unsealed response (Dkt. 317); the Government's response to Shaw's supplemental brief (Dkt. 329); and Shaw's reply, which he also filed through counsel (Dkt. 330). The Government's sealed and unsealed responses to Shaw's pro se motion are identical.

[4] Before an inmate moves for compassionate release under § 3582(c)(1), the inmate must either exhaust his or her administrative remedies with the BOP or wait 30 days from when the inmate filed a request with his or her warden. 18 U.S.C. § 3582(c)(1)(A); United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020). Here, the Government concedes that Shaw "appears to have exhausted his request for compassionate release with the BOP." Resp. to Mot. at 7.

whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

The Court considers (i) whether extraordinary and compelling circumstances warrant modifying Shaw's sentence, and (ii) whether the § 3553(a) factors support a sentence modification.

### A. Extraordinary and Compelling Circumstances

As he did in his prior compassionate release motion, Shaw argues that he is entitled to a sentence modification due to his risk of infection from COVID-19 and the harsh conditions of confinement created by COVID-19. Mot. at 5, 7–11. He also argues that he is entitled to a sentence modification because he has been rehabilitated and because his case is "emblematic of the breakdown of [the] justice system's sentencing structure." Id. at 6, 11–12. The Court considers each asserted reason in turn.

#### i. COVID-19

With respect to motions for compassionate release premised on a defendant's fear of contracting and suffering severe illness from COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Prior to the development of COVID-19 vaccines, courts would generally consult the guidance on high-risk factors published by the Centers for Disease Control and Prevention (CDC) to determine whether a defendant's specific conditions placed the defendant at a higher risk of suffering severe illness from COVID-19. See United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021). However, following the development of the vaccines, courts now examine whether a defendant has been offered a COVID-19 vaccine because "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19

4

vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021).

Shaw argues that he has a heightened risk of contracting COVID-19 because he is a "black man," he is obese, and he has a "history of [h]ypertension." Mot. at 5. The CDC recognizes some of these conditions as conditions that may make an individual more likely to get very sick from COVID-19.[5] But Shaw's fear of suffering severe illness from COVID-19 is ultimately non-compelling due to his vaccination status. See Lemons, 15 F.4th at 751. Shaw received his second dose of the two-dose Pfizer-BioNTech vaccine on September 23. BOP 2021 Health Records at PageID.2950 (Dkt. 316-1). Further, the Government represents that "at all BOP facilities, inmates have also been offered booster shots in accordance with CDC guidance." Resp. to Supp. Br. at 4 (punctuation modified).

Additionally, Shaw's arguments about the state of COVID-19 conditions at his facility are undercut by the available data. Of the approximately 1,106 inmates housed at FCI Sandstone,[6]

---

[5] Specifically, the CDC recognizes being overweight (defined as a BMI of 25 or higher) and hypertension as conditions that may make an individual more likely to get very sick from COVID-19. See CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 6, 2022). While "[r]ace and ethnicity are risk markers for other underlying conditions that affect health," race itself does not increase an individual's likelihood of severe illness from COVID-19. See CDC, "Risk for COVID-19 Infection, Hospitalization, and Death By Race/Ethnicity," https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html (last visited July 6, 2022).

[6] FCI Sandstone can house up to 1,139 inmates. See BOP, "FCI Sandstone," https://www.bop.gov/locations/institutions/sst/ (last visited July 6, 2022). But, according to Shaw, "[c]urrently the facility houses 1,106 inmates." Supp. Br. at 4.

1,029 are vaccinated (93.03%).[7] Further, there are currently no inmates who have a confirmed COVID-19 diagnosis; there are only two confirmed cases among staff.[8]

For these reasons, Shaw's COVID-19-related arguments do not establish a compelling and extraordinary reason to release him.

### ii. Breakdown in the Justice System

Shaw points to the fact that Judge Tarnow, in denying Shaw's § 2255 motion, described his case as "emblematic of the breakdown of [the] justice system's sentencing structure." Mot. at 6. But a criminal defendant's weakened negotiating position is not an extraordinary circumstance. "Extraordinary," as used in § 3582(c)(1)(A), means "'most unusual,' 'far from common,' and 'having little or no precedent.'" United States v. Hunter, 12 F.4th 555, 562 (6th Cir. Aug. 30, 2021) (quoting Webster's Third New International Dictionary: Unabridged 807 (1971)). As Judge Tarnow put it, a criminal defendant's "weakened [negotiating] position has become so ubiquitous in our nation's system of justice that it has its own name – 'the trial tax.'" 11/3/20 Op. at 26 (emphasis added). Nor is it a compelling reason to reduce Shaw's sentence. Compelling means "forcing, impelling, driving." Hunter, 12 F.4th at 562 (punctuation modified). Judge Tarnow, in denying Shaw's § 2255 motion, opined that the "inequitable result in this case is the byproduct of excessive prosecutorial power, and not the alleged involuntariness of his plea or ineffective assistance of his counsel." 8/9/18 Op. at 13 (Dkt. 240). The fact that a criminal defendant like Shaw now regrets knowingly and voluntarily entering into a plea agreement certainly falls short

---

[7] See BOP, "COVID-19 Vaccine Implementation," https://www.bop.gov/coronavirus/ (last visited July 6, 2022).

[8] BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/ (last visited July 6, 2022).

of a compelling circumstance. To hold otherwise would open the door for any criminal defendant to undo a valid plea agreement.

### iii. Rehabilitation

Finally, Shaw argues that his post-sentence rehabilitation, in combination with the other reasons that he asserts for compassionate release, warrants modifying his sentence. However, as Shaw recognizes, see Mot. at 11, "Congress was emphatically clear that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason,'" Hunter, 12 F.4th at 572 (quoting 28 U.S.C. § 994(t)). Shaw has not shown any other reason to release him, and, therefore, his rehabilitation is insufficient to constitute an extraordinary and compelling reason to modify his sentence.

Even if Shaw had shown an extraordinary and compelling reason to reduce his sentence, a sentence modification would still be unwarranted based on the § 3553(a) factors, as explained below.

### B. Section 3553(a) Factors

Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

Shaw's crime was undoubtedly serious. From 2012–2015, Shaw and his coconspirators conspired to distribute heroin in Detroit, Michigan. Plea Agreement at 2. "Heroin is a Schedule I controlled substance, meaning that it has no accepted medical use and a high potential for abuse." United States v. Coleman, No. 15-20624, 2022 WL 1026542, at *4 (E.D. Mich. Apr. 6, 2022). "The circulation of such addictive drugs presents a grave danger to the community's health and

wellbeing." Id. (punctuation modified). The grave dangers of heroin are, unfortunately, exemplified by this very case. Shaw sold heroin to two individuals who, after consuming the heroin, nearly died. Plea Agreement at 4. The dangerous nature of Shaw's drug trafficking activities is further punctuated by the fact that many of his coconspirators possessed firearms "at the locations where drugs, packaging material, and money were stored." Id. at 3. This shows that the members of Shaw's conspiracy were prepared to use deadly weapons to protect their drugs and drug proceeds.

Despite the severity of Shaw's crime, which resulted in a sentencing guideline range of 210–262 months, Judge Tarnow imposed a below-guidelines sentence of 180 months' imprisonment. See Supp. Br. at 10. Shaw has served five-and-a-half years, which is approximately one-third of his sentence. Shaw's long-remaining sentence weighs heavily against further reducing his sentence. See, e.g., Ruffin, 978 F.3d at 1008 (affirming district court decision that § 3553(a) factors did not support a sentence reduction in part because the defendant had served less than half of his sentence); United States v. Richards, No. 12-20372, 2021 WL 912389, at *3 (E.D. Mich. Mar. 10, 2021) ("[A]llowing Defendant to be released after serving less than half of his sentence would not promote respect for the law or proper deterrence, [or] provide just punishment . . . ."). This is particularly so given the fact that Shaw's sentence is already a below-guidelines sentence. See United States v. Santana, No. 11-20177, 2021 WL 493384, at *3 (E.D. Mich. Feb. 10, 2021) ("This Court . . . imposed a sentence more than five years below the bottom of the guideline range. Releasing Petitioner now, after he has served less than seven years for a crime that called for between 19 and 24 years imprisonment, would not promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from further crimes of Petitioner.").

Shaw acknowledges the severity of his crime but argues that his post-sentence rehabilitation efforts—as well as his reentry plan—show that he will not recidivate and, therefore, weigh in favor of modifying his sentence. Mot. at 12; Supp Br. at 13–14. Just a year ago, Judge Tarnow acknowledged that Shaw had "submitted several certificates showing his history of program participation in prison." 4/12/21 Order at 3. But ultimately, Judge Tarnow was not convinced of Shaw's rehabilitation, citing Shaw's disciplinary record and need for further participation "in prison programming that will prepare him for a safe return to the community." Id.

Since Judge Tarnow's ruling, Shaw's disciplinary record has not improved. As the Government represents, Shaw has added three new disciplinary incidents. Resp. to Mot. at 19 (citing Inmate Discipline Data (Dkt. 315-4)). This brings his total number of disciplinary incidents up to 19 incidents, including: "giving/accepting money without authorization, failing to follow safety regs, possessing a hazardous tool, threatening bodily harm, possessing an unauthorized item (two incidents), refusing to obey an order (three incidents), being insolent to staff member, being in an unauthorized area (two incidents), being unsanitary or untidy, disruptive conduct-high, possessing a nonhazardous tool (two incidents), destroy/dispose item, and use of drugs/alcohol (two incidents)." Id. at 19–20; Inmate Discipline Data. Shaw's efforts to complete further prison programming, by comparison, have been minimal. Shaw represents that since he was last before Judge Tarnow, he "complet[ed] the Non-Residential Drug Abuse Program which is a minimum of 12 weeks." Supp. Br. at 12.

To be clear, Shaw's completion of the Non-Residential Drug Abuse Program was not a waste, and the Court commends Shaw on his steps towards rehabilitation. However, he has a long way to go before he no longer poses a serious danger to the public. The BOP has assessed Shaw

to be a medium risk of recidivism and in need of treatment further programming in areas such as anger/hostility. Inmate History (Dkt. 315-5). If Shaw were released at this time, the safety of the public would be put in significant jeopardy.

The § 3553(a) factors, therefore, weigh heavily against granting Shaw's motion.

## II. CONCLUSION

For the reasons stated above, Shaw's motion to modify his sentence (Dkt. 311) is denied.

SO ORDERED.

Dated: July 6, 2022  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge